***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Gregory, and the briefs and oral arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the prior Opinion and Award, and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer.
3. The Travelers Insurance is the insurance carrier on the risk in the claim.
4. Plaintiff's average weekly wage is $566.82, yielding a compensation rate of $377.89.
5. The parties stipulated into evidence the following: a pre-trial agreement, stipulated exhibit one which contains a packet of Industrial Commission Forms, stipulated exhibit two which is a packet of plaintiff's medical records from Dr. Hodgson, Dr. Candella, Carolina Arthritis Associates and Dr. Melin, stipulated exhibit three consisting of plaintiff's employment file, stipulated exhibit four consisting of discovery responses, stipulated exhibit five containing letters from The Travelers, stipulated exhibit six consisting of a "to whom it may concern letter" from Vera Walker dated May 25, 2000 and its attachment, an Industrial Commission Form 18 completed by plaintiff.
 ***********
Based upon the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 64 years old. Plaintiff had worked for defendant-employer, a manufacturer of office furniture, from 1985 through April 2000. As an inspector, plaintiff performed final inspections of desks and other office furniture manufactured by defendant-employer. Plaintiff first worked as a case cleaning inspector performing random inspections until approximately early January 2000 when she was transferred to a station where she performed inspections full-time, pushing and pulling desks to and from her station.
2. Plaintiff has suffered back pain to varying degrees for many years, dating back to her 20's. However, plaintiff's back condition had been relatively stable during the period preceding January 12, 2000 and March 31, 2000.
3. On January 12, 2000, after plaintiff had clocked into her station, a co-worker informed her that another co-worker had slammed her hand in the trunk of her car in the parking lot. Consequently, plaintiff went to check on the condition of the injured coworker. The parking lot was icy and slick and plaintiff slipped and fell on her left shoulder, wrist, head, and back. Plaintiff was helped up by coworkers and continued to work that day. Plaintiff experienced pain in her wrist and head but did not seek medical treatment or report the incident. However, the plaintiff reasonably believed that her supervisor knew about the fall because of comments he made to her that day. Ms. Vera Walker, a human resources worker for defendant-employer, testified that she was aware of the plaintiff's fall and that Ms. Walker did not fill out an accident report.
4. Plaintiff continued to work for defendant-employer after she slipped and fell in the parking lot. Her job duties were somewhat different beginning in early January 2000 as she was assigned to inspect all goods. The plaintiff's duties became more strenuous in that she was required to push or pull the desks on and off a conveyor belt and through large doors into the next area of the plant.
5. On 31 March 2000, the plaintiff felt a catch or pop in her back as she pulled a desk. On this date she went to Dr. Hodgson, her primary care physician and complained about back pain. Plaintiff was treated conservatively with medication and removed from work for two weeks.
6. The plaintiff continued to work for those 2 weeks for fear she might be fired or would not be considered for a raise. She provided the note regarding her work status to Russ Conn, who indicated that the employer would provide some sort of assistance. This assistance was never provided.
7. Jamie Coleman, plaintiff's supervisor, advised plaintiff that she needed to fill out an injury report. The report was completed by Vera Walker.
8. On 25 May 2000 the plaintiff and Vera Walker completed a Form 18 and memo acknowledging notice of the accident to employer and the claim of the employee. Vera Walker recalled filling out the forms but could not recall what she did with the forms, but the Form 18 was not received by the Industrial Commission. The plaintiff was under the reasonable belief and reasonably relied on her perception that the forms would be properly filed with the Industrial Commission.
9. On 26 May 2000 a Form 61 was filed with the Industrial Commission responding to and denying the claim of 12 January 2000.
10. On 6 July 2000 plaintiff was having significant back pain and Dr. Hodgson referred plaintiff to Dr. Candella. Plaintiff reported to Dr. Candella a history of having significant back pain after moving desks. Dr. Candella treated plaintiff conservatively with injections of Depomedrol. This treatment had some success but plaintiff's back pain returned with activity.
11. Thereafter, the plaintiff was sent to Dr. Tsiktsiris for an evaluation concerning arthritis. Dr. Tsiktsiris performed a CT scan and referred her to Dr. Melin, a neurosurgeon, and prescribed physical therapy at Columbus Hospital. The plaintiff attended four physical therapy sessions but had worsening pain and the therapy was discontinued.
12. Dr. Melin diagnosed the plaintiff with L5-S1 Sponylolisthesis. Dr. Melin indicated that an L5-S1 fusion could be an option in the future. Thereafter, Dr. Hahn at Pain Management gave the plaintiff two epidural injections, with the last one being 20 August 2002.
13. The plaintiff retired from her employment on 26 April 2000.
14. Sometime after plaintiff's retirement, approximately 5 May 2000, plaintiff reported her 31 March 2000 back injury to defendant-employer and met with Ms. Vera Walker who was acting human resources manager. Ms. Walker indicated that plaintiff would receive short-term disability, which plaintiff did receive. Ms. Walker explained that she would discuss workers' compensation benefits with the home office. Thereafter, defendant-employer filed a Form 19 with the Industrial Commission, which was dated May 24, 2000 and received by the Commission on either June 5 or 8, 2000. The Form 19 indicates a date of injury of 12 January 2000 and a mechanism of injury of a slip and fall on the ice in the parking lot.
15. Drs. Hodgson and Melin testified that the traumas described by plaintiff of 12 January 2000 and 31 March 2000 aggravated her preexisting, previously asymptomatic back condition.
16. Dr. Hodgson testified in his deposition that plaintiff's 12 January 2000 injury "could have exacerbated the — pain that [plaintiff] was experiencing or could have caused the pain."
17. The plaintiff has been unable to work since 26 April 2000.
18. Subsequent to the plaintiff leaving work, she received short-term disability benefits from defendant-employer for a few months.
 ***********
Based on the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and as a direct result of her employment with defendant in that she suffered specific traumatic incidents on 12 January 2000 and 31 March 2000. The plaintiff has been disabled from any work since 26 April 2000 due to the compensable injury. N.C. Gen. Stat. § 97-2(6), Glynn v. PepcomIndustries, Inc., 122 N.C. App. 348, 469 S.E.2d 588 (1996).
2. Plaintiff's workplace injuries of 12 January 2000 and 31 March 2000 aggravated a preexisting, nondisabling condition. Wyatt v. Sharp,239 N.C. 655, 80 SE.2d 762 (1954).
3. The plaintiff reasonably relied on the defendant-employer to file the Form 18 completed by the plaintiff and the defendant-employer's human resources worker. The defendants are thereby equitably estopped to rely on N.C. Gen. Stat. § 97-24 to bar the plaintiff's claim. Parker v.Thompson-Arthur Paving Co., 100 N.C. App. 367, 396 S.E.2d 626 (1990);Belfield v. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44 (1985).
4. The plaintiff is entitled to total disability compensation from 26 April 2000 and continuing at a weekly rate of $377.89 until the plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. §97-29.
5. The plaintiff is entitled to past and future medical treatment related to her compensable back condition to the extent that such treatment effects a cure or gives plaintiff relief. N.C. Gen. Stat. §97-25.
6. To the extent that defendant-employer paid for 100% of the plaintiff's short-term disability plan, the defendants are entitled to a credit for the disability benefits paid to the plaintiff. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee, and any credit owing under N.C. Gen. Stat. § 97-42, defendants shall pay plaintiff total disability compensation from 26 April 2000 and continuing at a weekly rate of $377.89 until the plaintiff returns to work or further order of the Commission. Amounts that have accrued shall be paid paid to plaintiff in a lump sum.
2. Defendants shall pay plaintiff's past and future medical expenses related to her compensable back condition as long as such treatment effects a cure or brings relief.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff in paragraph one of this AWARD is approved for plaintiff's counsel. Twenty-five percent of any lump sum owed plaintiff shall be paid directly to plaintiff's counsel, thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
4. Defendants shall bear the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER